CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
October 29, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
   DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **CALVIN TYRONE CHEEKS,** | ) |
| Plaintiff, | ) Case No. 7:24CV00744 |
| v. | ) **OPINION** |
| **WARDEN ISRAEL D. HAMILTON, ET AL.,** | ) JUDGE JAMES P. JONES |
| Defendants. | ) |

*Calvin Tyrone Cheeks, Pro Se Plaintiff.*

The plaintiff, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendant prison officials exposed him to black mold and then failed to provide proper medical treatment for symptoms he experienced. After review of the Complaint, I conclude that the action must be summarily dismissed and that Cheeks' separate motion seeking interlocutory injunctive relief must be denied.

I.

Cheeks claims concern events that occurred while he was incarcerated at Keen Mountain Correctional Center (KMCC), a prison facility operated by the Virginia Department of Corrections (VDOC) and located in this judicial district. He alleges that on July 5, 2023, he "put in a sick call request about having chest

pain again an[d] medical put [him] on the GKE [sic] machines an[d] they say everything was nominal [sic]." Compl. 10, Dkt. No. 1.[1]  On July 9, 2023, Cheeks told Correctional Officer Endicott that he needed to see a nurse because he was having chest pains and his legs were numb.  Nurse Deel came to see Cheeks and "wanted to argue[ ] with [him] about how many times [he] had been to medical for chest pains."  *Id.*

On September 26, 2023, Cheeks asked to see a nurse because his throat was "still sore," but he only received medication that did not "do anything for" him.  *Id.*  At a follow up exam on October 19, 2023, he received medication that he "knew is not going to work."  *Id.*  On November 9, 2023, he put in a sick call that he was having chest pain and his throat was sore.  Nurse Deel saw him on the morning of November 11, 2023, about this complaint and "had a[n] attitude with" him.  *Id.*  Later that day, Cheeks' cell mate told the booth officer that Cheeks was having chest pains and shortness of breath and his whole body was numb.  A nurse came, gave Cheeks "some C.T.M. pill and cough syrup"; thirty minutes later, after pill call was completed, Cheeks went to medical, staff took his blood pressure, and gave him "Milante," a medicine for heart burn.  *Id.* at 11.

---

[1] Page numbers in citations to documents in the record of this case refer to the page number assigned by the court's electronic docketing system.

On November 15, 2023, "Dr. Ball" saw Cheeks and he reported his symptoms to her. *Id.* She ordered lab work, a chest X ray, and an ultrasound of his heart. *Id.* The lab work and X ray were performed within a week, and the ultrasound was performed on November 29, 2023. Dr. Ball told Cheeks that all his test results were normal. On December 28, 2023, Cheeks saw Dr. Ball and "was put on the GKE machine it was normal." *Id.* at 12.

On January 2, 2024, Cheeks saw an ear, nose, and throat (ENT) specialist, "Dr. Zaven" who allegedly said that the left side of his throat "looked irritated and red." *Id.* Cheeks alleges that sometime in January 2024, he "had biopsies done of [his] throat and a stress test on [his] heart."[2] Add'l Evid., at 10, Dkt. No. 9-2. Before he received any report about the results of these tests, Cheeks was transferred to another VDOC facility, St. Bride's Correctional Center (SBCC), on February 14, 2024. *Id.*

Cheeks asserts that he suffered ongoing physical pain at KMCC allegedly caused by exposure to black mold he believes was present in "the showers and the ventilation system in the cells, closets outside the cell." Compl. 12, Dkt. No. 1. He alleges that black mold exposure caused him to suffer "diarrhea," "sharp pain

---

[2] In the Complaint, Cheeks states that on January 2, 2024, he had an "operation by Dr. Zaven Jabourian MD." Compl. 12, Dkt. No. 1. Although Cheeks refers to an exhibit about this procedure, no medical record regarding the event is present in the record. Given the alleged timing of the so-called operation, I will presume without deciding that in this part of the Complaint, Cheeks is referring to the throat biopsies that occurred while he was confined at KMCC.

in [his] chest, sore throat, . . . stomach pain, weight loss, vomiting, loss of appetite," and unspecified physical pain every day at KMCC. *Id.* at 13.

Cheeks sues VDOC Director Chadwick Dotson; Prison Medical Provider, identified as "a private Virginia corporation" under contract with the VDOC to provide medical services to inmates; and various KMCC employees: Ms. Ball, medical provider; Israel D. Hamilton, Warden; Nurses Deel, Harmon, Smith, and Justice; officers Nicholas, Widnez, Thomas, Morton, and Endicott; Ms. Harr, grievance ombudsman; a John Doe maintenance worker; and John and Jane Does who serve as medical administrators at KMCC. He claims that Dotson and KMCC defendants exposed him to black mold, failed to provide appropriate medical care for symptoms it caused him to experience, and/or failed to process his grievances or requests properly under VDOC procedure in violation of due process. As to his claims against the KMCC defendants, he seeks compensatory and declaratory relief.

Cheeks also names as defendants some individuals employed at SBCC where he is now confined: Farrington, a medical provider; Olivas, a medical administrator; Warden Watson; and John and Jane Does, who are nurses there. However, the Complaint does not state facts about any actions the SBCC defendants have taken or failed to take in violation of Cheeks' constitutional rights. Rather, he asks the court to order these individuals to provide Cheeks an "MRI and

sprudum [sic] test" and to order them to pay him compensatory damages for the physical harm he has allegedly suffered from exposure to black mold. *Id.* at 15–16.

II.

Under 42 U.S.C. § 1997e(c)(1), the court may dismiss a prisoner's civil action concerning prison conditions "if the court is satisfied that the action is frivolous, malicious, [or] fails to state a claim upon which relief can be granted." A viable complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).[3] To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Furthermore, under § 1983, "liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).

Cheeks faults many KMCC employees with failing to protect him from the alleged effects of exposure to black mold at the facility. The relevant standard for evaluating a claim of inhumane conditions of confinement was set forth in *Helling*

---

[3] I have omitted internal quotation marks, alterations, and/or citations here and throughout this Opinion, unless otherwise noted.

*v. McKinney*, 509 U.S. 25 (1993), which involved an inmate's claim regarding exposure to ETS (environmental tobacco smoke) from his cell mate. Drawing from *Helling*'s two-part Eighth Amendment analysis of an ETS exposure claim, the inmate in this case must state facts showing that, objectively, he endured unreasonably high exposure to black mold that society would consider violative of contemporary standards of decency. *Id.* at 35-36. He must also state facts showing that, subjectively, prison officials exhibited deliberate indifference to dangers presented by the inmate's exposure to black mold. *Id.* at 36. "More than mere scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will be caused by exposure" is necessary to establish the objective component. *McIntyre v. Phillips*, No. 1:07-CV-527, 2007 WL 2986470, at *2 (W.D. Mich. Sept. 10, 2007).

I cannot find that Cheeks has stated facts that can meet the objective facet of the analysis. His claim of harmful exposure to black mold rests on nothing more than his self-serving, inexpert observations of the showers and other areas of the prison. He provides no evidence that any scientific test or expert has identified the substances Cheeks claims to have seen there as black mold. Cheeks also presents no evidence that any medical professional has ever linked any of the physical maladies he allegedly experienced at KMCC to black mold exposure rather than to other causes.

Cheeks also has not satisfied the subjective, deliberative indifference aspect of the Eighth Amendment analysis, which requires a showing as to each defendant of conscious disregard of a substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The deliberate indifference standard "describes a state of mind more blameworthy than negligence." *Id.* at 835. Accidents, mistakes, and other types of negligence are not constitutional violations merely because the victim is a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Rather, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference" and disregard the risk. *Farmer*, 511 U.S. at 837.

Cheeks does not state facts showing that any of the defendants knew before this lawsuit that KMCC contained health-threatening levels of black mold at any time during the period at issue, or before or after that time. Certainly, Cheeks' factual allegations do not show that any defendant, including the medical professionals, knew or even suspected that the physical ailments of which Cheeks complained were caused or aggravated to any extent by exposure to black mold at the prison. Nor does he show that any defendant knew of and disregarded any unreasonable risk that exposure to black mold at KMCC would cause a significant risk of harm to Cheeks personally or to any inmate in the facility. I will summarily

dismiss Cheeks' claims that any defendants were deliberately indifferent to his safety at KMCC.

Cheeks also claims that various defendants failed to ensure that he received appropriate medical care for conditions allegedly caused by his exposure to black mold. Only "deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). To prove deliberate indifference, Cheeks must show that the defendant prison official had "actual . . . knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id*. To be unconstitutional, a medical defendant's conduct must have been "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier ex rel. Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), overruled in part on other grounds by *Farmer*, 511 U.S. at 837. Mere negligence, errors in judgment, inadvertent oversights, or disagreements between doctor and patient about the prisoner's treatment plan do not support a finding that a defendant acted with deliberate indifference. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) ("Questions of medical judgment are not subject to judicial review."). Moreover, a non-medical official cannot be held liable for a failure to provide an inmate

medical treatment where, as here, that inmate was under the care of health-care providers. *Miltier*, 896 F.2d at 854.

Cheeks' allegations do not support any claim that KMCC staff were grossly incompetent or deliberately indifferent regarding his medical needs. In a matter of months, medical staff examined him numerous times, provided medications, ordered diagnostic blood work, X rays, and an ultrasound, and arranged for him to see an ENT specialist. Cheeks apparently believes providers and other staff should have acted more quickly or differently to address his medical conditions. Cheeks' disagreement with medical judgments regarding the type and timing of medical interventions does not support a finding of deliberate indifference. Even if some delay in sending him to the specialist could qualify as medical negligence, such negligent actions do not rise to the level of a constitutional violation actionable under § 1983. *Estelle*, 429 U.S. at 105–06. Moreover, any defendant without medical expertise could rightfully rely on the judgments of the qualified medical staff to provide Cheeks with appropriate treatment. *Miltier*, 896 F.2d at 854. For these reasons, I conclude that Cheeks' medical claims must be summarily dismissed.

Finally, Cheeks also complains that various defendants violated state regulations and/or failed to properly handle his grievances. While he claims these alleged misdeeds violated due process, I conclude that they fail to state any claim

actionable under § 1983. Even if the defendants somehow violated VDOC procedural rules related to this disciplinary proceeding, such violations of state law do not give rise to any federal due process issue actionable under § 1983. *Riccio v. Cnty. of Fairfax,* 907 F.2d 1459, 1469 (4th Cir. 1990).[4] Furthermore, it is well established that inmates have no constitutional right to a prison grievance procedure or to access an existing procedure. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017).

For the stated reasons, I will dismiss this civil action without prejudice, pursuant to § 1997e(c), for failure to state a claim upon which relief could be granted.

### III.

Cheeks has presented two other submissions that I must decide. First, he objects to the magistrate judge's denial of his Motion for Appointment of Counsel. Cheeks states that he does not have a high school education and has been relying on assistance from another inmate to pursue this case. He also complains that the issues in the case are complex and will require expert testimony and depositions. However, the court does not have funding for these types of evidence development to support Cheeks' claims, which at present, are based merely on his speculation

---

[4] To the extent that Cheeks raises any related claims under state law, I decline to exercise supplemental jurisdiction over them, pursuant to 28 U.S.C. § 1367(c), and will dismiss them without prejudice.

and self-serving conjecture about the presence and effects of black mold at KMCC. As I have determined that his Complaint does not state factual matter sufficient to present any actionable § 1983 claim, I also conclude that appointment of counsel is not warranted in this case, and I will overrule his objection to the denial of his prior motion seeking counsel.

Second, Cheeks has also moved for preliminary injunctive relief. Specifically, he moves for a court Order that he receive appropriate medical care at SBCC, the facility where he is now confined. Although he has named defendants from that institution, he has not stated facts showing that such extraordinary relief is warranted.

"A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). A party seeking a preliminary injunction must state facts clearly showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Each of these four factors must be satisfied. *Id.*

As an initial matter, for reasons already discussed, Cheeks has not demonstrated that anyone has deliberately exposed him to harm or denied him

appropriate medical care at KMCC. Thus, he has not demonstrated a likelihood of success on the merits of the underlying claims in this lawsuit. For the same reasons, he has not stated facts showing that he will suffer irreparable harm in the absence of the court intervention requested. Furthermore, I find no facts indicating that the potential impact of court-ordered medical care on staff and other inmates would be minimal or that such an order would serve the public interest. Cheeks has received extensive medical testing and, by his own allegations, is set up to receive ongoing treatment at SBCC, although possibly not on the timetable he would prefer. Such disagreements with the judgments of his current medical providers do not support any constitutional claim actionable under § 1983. Accordingly, I will deny Cheeks' motion seeking interlocutory injunctive relief.

    A separate Order will be entered herewith.

    DATED: October 29, 2025

    /s/  JAMES P. JONES
    Senior United States District Judge